HARTMAN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. **PRACTICE: Pleading and Proof: General and Particular Negligence.** In an action against a street railway company for damages caused by the negligent collision of one of defendant's cars with plaintiff's wagon at a street crossing, where the particular and only acts of negligence alleged were the excessive speed of the car and the failure to ring the bell, an instruction which permitted a recovery on the theory that the motorman could have avoided the accident after the discovery of the danger, by the exercise of ordinary care, was erroneous.

2. ———: ———: ———. In such a case, where the evidence tended to show that the plaintiff's driver failed to look and listen before driving upon the track where the collision took place a general instruction authorizing a verdict for the defendant, if the negligence of plaintiff's driver contributed directly to the injury, was insufficient and the refusal of an instruction directing attention to that particular act of contributory negligence, was erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*Sears Lehmann* with *Geo. W. Easley* for appellant.

(1) The court erred in amending instruction numbered 20, offered by defendant as follows, the italicized words at the conclusion constituting the amendment. For no such issue as that raised in this amendment was presented in the petition or in plaintiff's instructions. Instructions must be based on the pleadings, and cannot change the issue raised in the pleadings. Chitty v. Railroad, 148 Mo. 74, 49 S. W. 868; Glass v. Gelvin, 80 Mo. 297; Bank v. Murdock, 62 Mo. 70; Moffatt v. Conklin, 35 Mo. 453; Wade v. Hardy, 75

Hartman v. Transit Co.

Mo. 394; Camp v. Hulan, 43 Mo. 591; Bank v. Armstrong, 62 Mo. 65; Melvin v. Railroad, 89 Mo. 106; Nall v. Railroad, 97 Mo. 68, 10 S. W. 610; Bender v. Dugan, 99 Mo. 126, 12 S. W. 795; Sparks v. Dispatch Co., 104 Mo. 531, 15 S. W. 417; Hasset v. Rust, 64 Mo. 325; Kenney v. Railroad, 70 Mo. 252; Railroad v. Cleary, 77 Mo. 634; Woods v. Campbell, 110 Mo. 572, 19 S. W. 813; Currier v. Lowe, 32 Mo. 203; Waldhier v. Railroad, 71 Mo. 514; Milling Co. v. Transit Co., 122 Mo. 277, 26 S. W. 704; Mason v. Railroad, 75 Mo. App. 10; State ex rel. v. Sitlington, 51 Mo. App. 252; Wright v. Fonda, 44 Mo. App. 634; George v. Railroad, 40 Mo. App. 434; Fairgrieve v. Moberly, 29 Mo. App. 142; Rothschilde v. Freusdorf, 21 Mo. App. 318; Nelson v. Mitchell, 38 Mo. App. 321; Bloom v. Pope, 36 Mo. App. 410; Gas Co. v. Mercer, 48 Mo. App. 644; Scott v. Allenbaugh, 50 Mo. App. 130. The court erred in refusing offered instruction 4 D. Because there was evidence in the case of a prejudice against the defendant and the defendant was entitled to an instruction aimed at this evidence and limiting its effect. Paletine v. Biggerstaff, 25 Mo. App. 534; Doan v. Railroad, 38 Mo. App. 408. (2) The court erred in refusing offered instructions 5-D, 9-D and 11-D. These instructions are correct expositions of the law of contributory negligence, that one who fails to look and listen before going on the track is negligent and cannot recover if this negligence contributed to cause his injury. Asphalt Cons. Co. v. Transit Co., 102 Mo. App. 469, 80 S. W. 741; Huggart v. Railroad, 134 Mo. 673, 36 S. W. 220; Payne v. Railroad, 136 Mo. 534, 38 S. W. 308; Lane v. Railroad, 132 Mo. 27, 33 S. W. 645, 1128; Weller v. Railroad, 120 Mo. 648, 23 S. W. 1061, 25 S. W. 532; Maney v. Railroad, 113 Mo. 10; Boyd v. Railroad, 105 Mo. 380, 16 S. W. 909; Hudson v. Railroad, 64 Mo. 484; Harlan v. Railroad, 65 Mo. 22; Sepetowski v. Transit Co., 102 Mo. App. 110, 76 S. W. 693. (3) The court erred in refusing the peremptory instructions offered by defendant at the close of plain-

tiff's evidence and again at the close of all the evidence, because the evidence of both plaintiff and defendant showed that plaintiff's driver drove on the track directly in front of the car. Moore v. Railroad, 176 Mo. 528, 75 S. W. 672; Roenfeldt v. Railroad, 180 Mo. 554, 79 S. W. 706; Kelsey v. Railroad, 129 Mo. 362, 30 S. W. 339; Hayden v. Railroad, 124 Mo. 566, 28 S. W. 74; Fanning v. Railroad, 103 Mo. App. 151, 78 S. W. 62.

*Montague Punch* for respondent.

### STATEMENT.

This action was instituted before a justice of the peace to recover for damage done to plaintiff's horse and wagon by one of the defendant's street cars. The accident transpired June 20, 1900, about 12:30 p. m. and on Laclede avenue in the city of St. Louis, west of its intersection with Sarah street. The testimony of the driver of the wagon is that while traveling on the north side of Laclede avenue, between Vandeventer avenue and Sarah street, he wished to cross to the south side of Laclede avenue; but before doing so looked to the rear and saw a car approaching about two hundred feet away. thereupon he drove diagonally across the tracks, making a cut of ten or fifteen feet in going across toward the southwest. When he was about half way over the north track the car struck the vehicle, carrying it eighty or ninety feet, breaking it and injuring the horse so badly he had to be shot. The driver said he had no idea at what speed the car was approaching and miscalculated the speed, and in consequence the collision resulted. He said that after he looked back before he started across the tracks he did not look again before the collision. The motorman testified that when the car was not more than twenty or twenty-five feet away the driver suddenly pulled the horse and wagon in front of it; that he (the motorman) used all the appliances at hand, but could not stop the car before it collided with the wagon.

This testimony was corroborated to some extent, as was that of the driver. A passenger on the car testified to seeing the wagon about ten inches north of the track the car was on and that the driver at first turned out of the way enough for the car to clear the wagon; then the motorman increased the speed of the car, and just as it was about to pass the wagon, the driver turned south on the track in front of the car. At this instant the distance between the two vehicles was about ten feet. There was evidence to show the driver did not look and listen for a car before he drove in front of the one that did the damage.

The complaint contains two paragraphs. The first one charges the motorman and conductor of the car with "carelessly and negligently and willfully and wantonly, and while causing said car to run at a high and reckless speed, and without ringing the gong on said car or otherwise (sic) causing said car to run down, strike, knock down and drag the horse attached" to plaintiff's wagon for a distance of from eighty-five to one hundred feet, whereby the horse was so injured that he had to be shot; that it also caused the wagon, its contents and the harness to be damaged. The second paragraph stated a cause of action based exclusively on alleged negligence of the defendant in employing the motorman who was operating the car, and averring that the motorman was inexperienced, incompetent and unskilful, and incapable of properly acting as motorman; that the transit company knew, or by the exercise of ordinary care, might have known the motorman was unfit, and that by reason of defendant's negligence in employing such an unfit person to operate its car, the car was caused, by the motorman's carlessness, to run against plaintiff's horse and wagon and damage them. The cause of action stated in the second paragraph of the statement was excluded from the jury's consideration by an instruction at the trial. It will be observed that the complaint is crude. As originally filed it was faulty in mingling in the first

paragraph or count, charges of both a negligent and a willful tort. Before the introduction of any evidence the circuit court permitted plaintiff to amend the statement by striking out the words "willfully and wantonly" in the first paragraph, so that the cause of action stated became one of negligence merely, to-wit: that the defendant carelessly and negligently and while causing its car to run at a high and reckless rate of speed and without . ringing the gong, collided with plaintiff's wagon. It will be seen that two careless acts are averred.

The court gave this instruction at plaintiff's request:

"The court instructs the jury, if you believe and find from the evidence that on the 26th day of June, 1900, the defendant, St. Louis Transit Company, operated a street car system, propelled by electricity upon, over and along Laclede avenue in the city of St. Louis, Missouri, between Vandeventer and Sarah street in said city, and operated a certain street car known as No. 1106, operated by electricity, and that on said day caused said car to run westwardly along Laclede avenue, between Vandeventer avenue and Sarah street, and that said Laclede avenue was an open public street in said city, and that plaintiff's agent or driver, duly acting for plaintiff, drove a horse and wagon, the property of plaintiff, along the north side of Laclede avenue, between Vandeventer avenue and Sarah street and that while in the act of driving said horse and wagon from the north side of Laclede avenue southwardly across the north track operated by said defendant, St. Louis Transit Company, said car No. 1106, operated by said St. Louis Transit Company, ran against said horse and wagon and knocked said horse down and injured him and did other damage; that the collision between the horse, wagon and car, was directly caused by defendant's motorman and agent in charge of said car, carelessly and negligently, and while running said car at a

high and reckless rate of speed, causing said car to run down, strike, knock down and drag the horse attached to said wagon, then the jury will find for the plaintiff; unless you further believe and find from the evidence, that plaintiff's agent or driver, by negligence on his part, directly contributed to said collision and injuries resulting therefrom; and in determining the question as to whether or not the defendant's motorman or agent operating said car, or the plaintiff's agent or driver were, or were not, negligent, you are instructed to take into consideration all the facts and circumstances as proved by the evidence, and shown to have existed at the time and place the collision occurred."

The defendant requested the following instruction without the part in italics, but the court amended it by adding that part and then gave it:

"The court instructs the jury that if they believe from the evidence in this case that defendant's motorman operating its west-bound car saw plaintiff's driver drive toward its track, said motorman had the right to presume that such driver would not attempt to cross immediately in front of said car, and if the jury further believe from the evidence that said driver attempted to drive across said west-bound track when said car was within a few feet of the point where he was attempting to cross said track, plaintiff cannot recover and your verdict must be for the defendant, *unless the jury believe from the evidence that the defendant's motorman, after he discovered the danger to which plaintiff's driver had exposed himself, wagon and horse, by attempting to so cross defendant's track could, by the exercise of ordinary care, have prevented the collision and injury.*"

The court refused this instruction requested by the defendant:

"The court instructs the jury that no matter at what rate of speed said car was running, still, it was the duty of plaintiff's driver to both look and listen for the

approaching car before attempting to drive across defendant's track.

"And if the jury further believe from the evidence that by looking said driver might have seen, or by listening he might have heard said approaching car and have avoided said accident, plaintiff cannot recover, and your verdict must be for the defendant."

GOODE, J. (after stating the facts).—The instruction given at plaintiff's request authorized a verdict in his favor only on a finding by the jury that the "collision between the horse, wagon and car was directly caused by defendant's motorman and agent, in charge of said car, carelessly, and negligently, and while running said car at a high and reckless rate of speed, causing said car to run down" plaintiff's horse and vehicle. There is no allegation in the complaint that the accident was due to the failure of the motorman to use reasonable efforts to stop the car on the appearance of danger to the wagon, unless such act of negligence is included in the words that he carelessly and negligently ran into the wagon. We think the sound view of the statement is that it counts on two acts of negligence only; excessive speed and failure to ring the bell. These breaches of duty are alleged distinctly and constitute the gravamen of the plaintiff's case as made by his pleading. The court appended an amendment to one or two instructions requested by the defendant, which permitted a recovery if the driver attempted to cross the track when the car was within a few feet of him, provided the jury believed from the evidence that the defendant's motorman, after he discovered the danger to which plaintiff's driver had exposed the horse and wagon by attempting to cross, could, by the exercise of ordinary care, have prevented the collision and damage. No issue of that kind was joined by the pleadings, nor was there any evidence tending to show the motorman could or could not have stopped his car after discerning the danger of a

collision.   The issues were broadened  by  the  instruc-
tions beyond both the pleadings and the evidence.

We think the court committed serious error in re-
fusing to instruct that it was the duty of the driver of
the vehicle to look and listen before he crossed the track.
As we have said, there was evidence to show he failed
to perform this duty.  If it was thought the clause in
the instruction given at the plaintiff's instance, which
denied a recovery if the driver's negligence directly con-
tributed to the injury, was sufficient advice on the sub-
ject of the driver's contributory negligence, and obviated
the giving of an instruction to look and listen before at-
tempting to drive over the tracks, the conclusion was
erroneous.   This precise question was passed on by the
Supreme Court in Murray v. Railroad, 176 Mo. 183, 75
S. W. 611, a case wherein the facts were very similar to
those before us.  In that case the court gave an instruc-
tion in regard to the effect of the plaintiff's contribu-
tory negligence much more full and definite than the one
given in this case, but refused some instructions re-
quested on the effect of Murray's failure to look and lis-
ten before he drove on the car track.  For this ruling the
cause was reversed, the court remarking that the gen-
eral instruction on contributory negligence was insuffi-
cient to cover the particular act of negligence in failing
to look and listen for a car; that as the defendant had
requested an instruction on this very point, he was en-
titled to it.  Such we understand to be the rule of law
generally maintained in cases whose facts are like those
before us and show the car was near and in sight when
the attempt to cross the track occurred.

The judgment is reversed and the cause remanded.
All concur.